Walter Schieroni and Stella Schieroni
20219 Black Canyon Dr
Katy, Texas [ 77450 ]
Telephone: (
Plaintiff pro se, in propria persona

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Walter  Schieroni  and Stella  Schieroni , | CASE NO:<br>JUDGE: |
| Plaintiff, | **COMPLAINT FOR: CIVIL RICO; SLANDER** |
| V. | **OF TITLE, ENFORCEMENT OF VOID** |
| DEUTSCHE BANK NATIONAL TRUST | **CONTRACT, IMPROPER ALTERATION OF** |
| COMPANY, AS TRUSTEE IN TRUST FOR | **THE NOTE AND DEED OF TRUST,** |
| THE BENEFIT OF THE CERTIFICATE | **FRADULENT MISREPRESENTATION AS** |
| HOLDERS FOR ARGENT  SECURITIES | **TO STANDING TO FORECLOSE,** |
| TRUST 2003-W7 ASSET-BACKED PASS- | |
| THROUGH CERTIFICATES, SERIES 2003-W7 | |
| Defendants. | |

Walter  Schieroni  and Stella  Schieroni  , in Propria Persona, (hereinafter "Plaintiff) files this Complaint against the Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 , and alleges the following:

NOTICE TO THE COURT: Use of all codes,  laws  and/or rules of procedure cited herein that may not be  or represent  law duly passed  by the Congress of the constitutional republic,  United States of America; that government directly created through the sovereign electors on the several states of that republic, and/or that may not  be or represent  law enacted by  that Congress  acting in its jurisdiction over the 50 freely associated compact states of that Constitutional Republic and in its jurisdiction over  their state  citizens domiciled on the land thereon,  is only used here  to notice the Defendant(s) of that which is applicable to them and is not intended to be  construed by this Court as an act of the Plaintiff granting jurisdiction of such law over him , nor to be understood

1

by the Court to mean that Plaintiff,  the living soul,  confers, submits to, or has knowingly  and intentionally entered into any such other  jurisdiction alluded to thereby.

PLAINTIFF, Walter Schieroni and Stella Schieroni are consumer and a natural person as that term is defined under 15 U.S.C. § 1602(h).  Plaintiff is owner of the principal dwelling  and  is domiciled  near   20219 Biack Canyon Drive,  Katy, Texas.

## **GENERAL ALLEGATIONS**

1.      Defendant  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7, (or herein after "DEUTSCHE", "Deutsche",  "DEUTSCHE BANK", "Deutsche Bank", "Deutsche Bank as trustee", or "Deutsche Bank National Trust Company"),  is a trust entity also known as a Special Purpose Vehicle became an alleged successor in interest to the originator and issued securities collateralized by the deed of trust under a master pooling and servicing agreement dated November 1, 2003 , by which all legal and equitable interest was transferred to the certificate holders. Defendant Deutsche Bank as trustee is acting in the capacity of the alleged representative for and nominee of the certificate holders for the purposes of foreclosure of the property because the loan was allegedly in default. Deutsche Bank National Trust Company  is not the holder or owner of the note.

2.      Plaintiff alleges Defendant  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7's  certificate holders  lacked standing to commence foreclosure because they were not the lawful holders of the rights of the contract  under which foreclosure took place and several fatal errors have occurred throughout the foreclosure process, rendering the foreclosure invalid.  .

The note, which was a negotiable instrument under UCC Article 3, then converted to a security, falls under UCC Articles 8 and 9 as a security.

Further, once it is securitized, it falls under UCC Articles 8 and 9 as a security.  The Federal Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security. (Staff Mortgage & Investment Corp. 550 F.2d 1228 (9th Cir 1997). Under Uniform Commercial Code, the security interest must be perfected by possession.  Lacking proof of this possession of the security it did not have the right to initiate foreclosure proceedings in its name.

4.Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-

W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  illegally sold the rights and interests in Defendant's loan instruments as  un-registered securities.  Selling un-registered securities is an automatic right of rescission of the original contract.  Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 's  illegal  conduct comprised of deceptive and unfair business practices, for selling unregistered securities.

As already noted DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  is  a Special Purpose Vehicle and alleged successor in interest to the originator and issued securities collateralized by the deed of trust under a master pooling and servicing agreement dated November 1, 2003  by which all legal and equitable interest was transferred to the certificate holders. The foreclosing  entity on the  property  is identified as DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST **FOR THE BENEFIT OF THE CERTIFICATE HOLDERS** FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7   {see  Notice of Substitute Trustee's Sale, exhibit NS attached.)

5.Defendant Deutsche Bank as trustee is acting in the capacity of the alleged representative for and nominee of the certificate holders for the purposes of foreclosure of the property. Since the sale of the rights and interests in the unregistered securities of which Plaintiff's debt instruments were a part was illegal and invalid, no legal and equitable interest in Plaintiff's debt instruments was transferred to the certificate holders to give Defendant Deutsche Bank as trustee  acting in the capacity of nominee of the certificate holders to have  power of foreclosure of the property in the certificate holders' behalf and  the rights of the Defendant in foreclosure should be enjoined.

## **FIRST CAUSE OF ACTION**
### **CIVIL RICO**
**Against DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7ᵢ**

18.   I repeat, re-allege and incorporate all herein by reference and each and every allegation set forth in paragraphs 1 through 19 inclusive, of all allegations and re-plead the same as set out in full with the same force and effect.

19. DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST **FOR THE BENEFIT OF THE CERTIFICATE HOLDERS** FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 Defendants et al have engaged in an unlawful pattern of racketeering activity for the common purpose of carrying out a fraudulent scheme against people that they have collected payments from.

20. Specifically, through the services of lenders, they have marketed to the public that they are in the business to loan money receiving notes and trust deeds as security for repayment when they withhold from the borrower that in fact, they and the lenders with whom they work are in the business of pooling and bundling these security instruments to sell the rights and interests in these non-registered securities to investors in the form of certificates of investment.

21. DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST **FOR THE BENEFIT OF THE CERTIFICATE HOLDERS** FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 is acting as a trustee, a third party, and as such, their activities affect interstate commerce and each is an "enterprise" within the meaning of 18 USC 1961(4) and 1962(b) and (c).

22. Plaintiff is informed and believes and thereon alleges that other parties, to be determined in discovery, are acting in behalf of the Defendant, as trustees and/or middlemen to conduct and assist in foreclosures and as such, their activities affect interstate commerce and they are each an "enterprise" within the meaning of 18 USC 1961(4) and 1962(b) and (c), engaged in a scheme of and artifice to defraud as herein described with the specific intent to defraud the public including Plaintiff, and in furtherance thereof, used and/or caused the use of the United States Mail, an indictable offense under USC 1341, in that the Defendant mailed, or caused to be mailed to Plaintiff or others, letters and other matter reflecting their fraudulent scheme as herein described.

23. Plaintiff is informed and believes and thereon alleges that DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST **FOR THE BENEFIT OF THE CERTIFICATE HOLDERS** FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 knowingly, willingly, directly and indirectly committed multiple predicate acts of racketeering activity, since inception of this loan transaction as hereinabove described, and thus have engaged in a "pattern of racketeering activity" within the meaning of 18 USC 1961(5). These acts were and are continuous, through and including the present, and reflect multiple and repeated acts of misconduct that are not sporadic or isolated in time, but rather are inter-related by their similar purpose and common targets as herein described.

**30.Plaintiff has been injured by Defendant** DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST **FOR THE BENEFIT OF THE CERTIFICATE HOLDERS** FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 **'S fraudulent and unscrupulous activities.  Their proceeding with the unlawful foreclosure  process without the legal power and authority to act for a lawful owner of the interests in the debt instruments on Plaintiff's property has caused extreme and undue hardship and detrimental effect on Plaintiff and threatening the loss of the rights of title to her property .**

**31.**As a direct and proximate result of the actions of the Defendant, Plaintiff  has suffered direct, actual injury and Plaintiff is entitled to recover threefold damages under 18 USC 1964(c).  The Plaintiff prays for relief from this court and asks that the court order the Defendant  to rescind the Notice of Default  and restore  quiet title back to Plaintiff and award damages as the court may determine.

## **SECOND CAUSE OF ACTION**

## **SLANDER OF TITLE**

**Against** DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7

32  I repeat, re-allege and incorporate all herein by reference and each And every allegation set forth in paragraphs 1 through 34 inclusive, of all allegations and re-plead the same as set out in full with the same force and effect.

33  As of the date of the recording of the Notice of Default, Defendant Deutsche Bank initiated a void foreclosure.  Defendant Deutsche Bank continued with an invalid foreclosure by recording a Notice of Trustee's Sale and subsequent Trustee's Deed upon Sale.  The void foreclosure has resulted in this slander of title.

35.  BY TAKING TITLE THROUGH THE AFOREMENTIONED FRAUDULENT FILINGS, the Defendants have a made a false and malicious written or spoken public statement disparaging Plaintiff's title to property that causes harm for which special damages may be awarded slander of title —M & P Concrete Prods. v. Woods, 590 So. Second 429 (1991) [called also defamation of title disparagement or property disparagement of title].

5
FIRST AMENDED COMPLAINT

### *Slander of Title*

Definition of Slander of Title: "a false and malicious written or spoken public statement disparaging a person's title to property that causes harm for which special damages may be awarded <damages for the filing of a fraudulent lien and for *slander of title M & P Concrete Prods. v. Woods*, 590 So. 2d 429 (1991).

Another statement of definition of the tort, perhaps more pertinent to the facts of this case, is to be found in Fearon v. Fodera (1915) 169 Cal. 370, at pages 379 and 380 [148 P. 200], as follows: "Slander of title,' as recognized by the law, may be defined to be defamation of title to property, real or personal, by one who falsely and maliciously disparages the title thereto,  and thereby causes the owner thereof some special pecuniary loss or damage. "Admittedly under this definition slander of title may be committed by maliciously clouding the title to real property and causing damage to the owner thereof by the execution, willful acceptance, and malicious recordation of a deed, which falsely declares the title of the property involved to be in a person other than the true owner.


36.     The Plaintiff prays relief from this court to restore title to Plaintiff by reconvening the deed of trust  of October 8, 2003.


### THIRD CAUSE OF ACTION

### VOID SALE FROM ULTRA VIRES ACT


**Against** DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7

37. Defendant **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7**did not have the power under  their charter to do what they did; illegally sell the rights and interests in Defendant's loan instruments as  un-registered securities to those seeking to make lawful security investments.   **It is a violation of the Securities Act of 1934 and provides a right to rescission of the contract.**

38. In Central Transp. Co. v. Paullman, 139 U.S. 60, 11 S. Ct. 478, 35 L. Ed. 55, the court said: "A contract ultra vires being unlawful and void, not because it is in itself immoral, but because the

corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it.  In such case, however, the action is not maintained upon the unlawful contract, nor according to its terms; but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain.  To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

39. "When a contract is once declared ultra vires, the fact that it is executed does not validate it, nor can it be ratified, so as to make it the basis of suitor action, nor does the doctrine of estoppels apply."  F&PR v. Richmond, 133 SE 898; 151 Va 195.

40. The Defendant **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 sold the rights and interests in the debt instruments of the Plaintiff as an unregistered security. It is a violation of the Securities Act of 1934 and provides a right to rescission of the contract.**

WHEREFORE, the Plaintiff moves this court to void the contract and restore quiet title to Plaintiff.

## **FOURTH CAUSE OF ACTION**

### **IMPROPER ALTERATION OF THE NOTE AND DEED OF TRUST**

**Against DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7**

The Plaintiff here is attacking the enforceability of the note and deed of trust by alteration in securitization without the consent of the trustor.

Specifically, on or about the date on which Plaintiff's debt instruments came into possession, assignment and ownership of the Defendant, **DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 ,** as a Special Purpose Vehicle and became an alleged successor in interest to the originator and issued securities collateralized by Plaintiff's note and deed of trust under a master pooling and servicing agreement dated November 1, 2003, securitization of the note and deed of trust effectively severed financial responsibility for losses incurred from default of the Plaintiff from Defendant's authority to incur or avoid losses by virtue of its position in the pooling and servicing agreement.

**More specifically, First, Securitization of the debt instruments given by the Plaintiff constitutes an alteration of the asset converting the deed of trust and note into unalienable instruments rendering it null, void and untransferable and possibly unenforceable against the Plaintiff.**

## MEMORANDUM OF FACT, LAW AND ARGUMENT

The trustee of a pass through trust or other special purpose vehicle has no legal or equitable interest in the securitized deed of trusts. The trustee profits from the fees collected from foreclosure. The certificate holders are ostensibly the owner and holder of the note. However, the terms of the trust as spelled out in the master pooling and servicing agreement do not allow the certificate holders to foreclose or to take part in controlling the deed of trust note. (See the prospectus for **ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7** found on SEC website http://www.secinfo.com/dqTm6.1hj.htm.

As seen therein, the certificate holders, guarantors and deed of trust insurers bear the losses but do not control the deed of trust. Servicers collect the payments from the homeowners on behalf of the investors. The bulk of their income comes from a percentage payment on the outstanding principal balance in the pool; the bulk of their net worth is tied to the value of the deed of trust servicing rights they purchased. A servicer may or may not lose money—or lose it in the same amounts or on the same scale—when an investor loses money. And it is servicers, not investors, who are making the day-to-day, on the ground, decisions as to whether or not to modify any given loan. Servicers continue to receive most of their income from acting as largely automated pass-through accounting entities, whose mechanical actions are performed offshore or by personified computer systems.

As the document shows, their entire business model is predicated on making money by skimming profits from what they are collecting: through a fixed percentage of the total loan pool, fees charged homeowners for default, interest income on the payments during the time the

servicer holds them before they are turned over to the owners, and affiliated business arrangements. Servicers make their money largely through lucky or strategic investment decisions: purchases of the right pool of deed of trust servicing rights and the correct interest hedging decisions. **Performing large numbers of loan modifications would cost servicers upfront money in fixed overhead costs, including staffing and physical infrastructure.**

As established in the Prospectus herein referenced, the so-called trust is organized as a special purpose vehicle ("SPV"). The SPV is organized by the securitizer so that the assets of the SPV are shielded from the creditors of the securitizer. The SPV follows the rules prescribed by the I.R.S. to qualify for treatment as an REMIC so that only the certificate holders but not the trust is taxed. Double taxation of the deed of trust proceeds to the trust and then to the certificate holder is avoided by "passing through" all the income to the certificate holders. **The SPV is accordingly a weak repository not engaged in active management of the assets. For this purpose, a servicing agent is appointed.** Moreover, all legal and equitable interest in the deed of trusts is passed through to the certificate holders.

As established in the Prospectus herein referenced, a typical deed of trust pool consists of anywhere from 2000-5000 loans. This is millions of dollars in cash flow payments each MONTH from a Servicer (receiving payments from borrowers) to a REMIC (Trust) with the cash flow "passing through" the Trust (REMIC) without taxation to the investors. The investors have to pay taxes on the cash flow payments from their interests just for the record. The taxes a Trust would have to pay on $30, 50 or 100 million dollars per year if this "pass through" taxation benefit didn't exist would be enormous.  In addition, if a Trust that was organized in February 2005 were found to have violated the REMIC guidelines outlined in the Internal Revenue Code, at $4 million per month in cash flow, there would be $190 Million in now or more in TAXABLE income due to have tax paid upon it by the   REMIC.

If a Trust - or a Servicer or Trustee acting on behalf of the Trust - were found to have violated these very strict REMIC guidelines to qualify as a REMIC, the taxable status of the REMIC can be revoked; the equivalent of financial Armageddon for the Trust and its investors.

As established in the Prospectus  herein referenced , A REMIC can be structured as an entity (i.e., partnership, corporation, or trust) or simply as a segregated pool of assets, so long as the entity or pool meets certain requirements regarding the composition of assets and the nature of the investors' interests. No tax is imposed at the REMIC level. To qualify as a REMIC, all of the interests in the REMIC must consist of one or more classes of "regular interests" and a single class of "residual interests." Regular interests can be issued in the form of debt, stock, partnership interests, or trust certificates, or any other form of securities, but must provide the holder the unconditional right to receive a specified principal amount and interest payments. REMIC regular interests are treated as debt for Federal tax purposes. A residual interest in a

REMIC, which is any REMIC interest other than a regular interest, is, on the other hand, taxable as an equity interest.

As established in the Prospectus herein referenced, In order for the Trust to qualify as a REMIC, all steps in the "contribution" and transfer process (of the notes) must be true and complete sales between the parties and within the three month time limit from the Startup Day. **Therefore, every transfer of the Note(s) must be a true purchase and sale, and, consequently the Note must be endorsed from one entity to another. Any deed of trust note/asset identified for inclusion in a Trust seeking a REMIC status MUST be deposited into the Trust within the three month time period calculated from the official Startup Day of the REMIC as per Section 860 of the Internal Revenue Code.**

**Securitization effectively severs financial responsibility for losses from the authority to incur or avoid losses. Foreclosure avoids litigation from disgruntled certificate holders who could claim a deed of trust modification improperly resulted in a financial loss.** Under the original deed of trust, the party deciding to foreclose was the party suffering any loss resulting from foreclosure. **With securitization the  nature of the deed of trust is altered  so the party making the decision to foreclose does not bear the loss resulting from foreclosure but avoids the liability which could result if a class of certificate holders claimed wrongful injury resulting from a modification made to achieve an alternate dispute resolution. <u>By separating the incidence of loss from the authority to foreclose, the original note and deed of trust has been altered without the consent of the trustor.</u>**

Second, Securitization also altered the note and deed of trust given by the Plaintiff by rendering them unalienable. **<u>Once certificates have been issued, the note cannot be transferred, sold or conveyed.</u>**

### MEMORANDUM OF FACT, LAW AND ARGUMENT

An assignee of a deed of trust and note assigned as collateral security is the real party in interest, holds legal title to the deed of trust and the note, and is the proper party to file suit to foreclose the deed of trust. <u>Lawyers Title Ins. Co., Inc. v. Novastar Mortg., Inc.</u>, 862 So.2d 793 (App. 4 Dist.2003), rehearing denied, review denied <u>880 So.2d 1212</u>. In the case of a securitization, the certificate holders become the proper party to bring foreclosure because they own and hold the note outright and not as a pledge of collateral.

It appears their inability to alienate and/or sell the note after securitization has no adverse consequences for the maker/ borrower who are the debtor.

**Recent history disproves this conclusion.** Several legislative and executive efforts to pursue alternate dispute resolution and provide financial relief to distressed homeowners have been **thwarted by the inability of the United States Government to buy securitized deeds of trust without purchasing most of the certificates issued.**

**An SPV cannot sell a deed of trust to the United States which is owned by different classes of certificate holders.** The certificate holders likewise cannot sell the deeds of trust. All they have are the securities held each of which can be publicly traded.

Plaintiff gave no consent to this. Failure to obtain the consent of the trustor to subsequent securitization of the deed of trust and note rendered the deed of trust unenforceable against him as its securitization constitutes an alteration of the instrument, not on its face, but by change of the nature and use of the instrument from that for which it was given by the trustor, the Plaintiff, i.e. to secure his payment of the note. As of now Plaintiff's deed of trust and note are being used as un-registered securities to collateralize certificates issued under a master pooling and servicing agreement dated November 1, 2003, by which all legal and equitable interest in the instruments was transferred to the certificate holders.

ARGUMENT

As cited above, **Securitization effectively severs financial responsibility for losses from the authority to incur or avoid losses. Foreclosure avoids litigation from disgruntled certificate holders who could claim a deed of trust modification improperly resulted in a financial loss.** Under the original deed of trust, the party deciding to foreclose was the party suffering any loss resulting from foreclosure. **With securitization the nature of the deed of trust is altered so the party making the decision to foreclose does not bear the loss resulting from foreclosure but avoids the liability which could result if a class of certificate holders claimed wrongful injury resulting from a modification made to achieve an alternate dispute resolution.**

The deed of trust is a security agreement between the creditor and debtor to secure repayment of the loan by encumbering collateral for the benefit of the creditor In California, non-judicial

foreclosures are conducted by a duly appointed trustee. There can be no disagreement that the deed of trust provides that the agreement may not be modified or amended by one party without the prior written consent of the other.

The master pooling and servicing agreement which is the organic document creating the mortgage backed securities changed the terms and conditions of the deed of trust. The changes were made unilaterally by the holder of the deed of trust as a successor to the original beneficiary named in the deed of trust. The changes are made without the consent of the trustor. These changes restrict the ability of those making the financial decisions for the trust to modify the deed of trust. *See, e.g.,* Anna Gelpern & Adam J. Levitin, *Rewriting Frankenstein Contracts: Workout Prohibitions in Residential Deed of trust-Backed Securities*, 82 S. CAL. L. REV. (forthcoming 2009). Manuel Adelino, *Why Don't Lenders Renegotiate More Home Deed of trusts? Redefaults, Self-Cures, and Securitization*, Fed. Reserve Bank of Boston, Public Policy Discussion Paper No. 09-4, July 6, 2009, *at* http://www.bos.frb.org/economic/ppdp/2009/ppdp0904.pdf Congressional Oversight Panel, *The Foreclosure Crisis: Working toward a Solution, at* http://cop.senate.gov/reports/library/report-030609-cop.cfm. Alan White, *Rewriting Contracts, and Wholesale: Data on Voluntary Deed of trust Modifications from 2007 and 2008 RemittanceReports,* Fordham Urb. L. J. 20 (forthcoming 2009), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1259538#

When the parties executed the deed of trust, the trustor was neither obligated to agree to an alternate dispute resolution in the event of a default nor restricted from entering an alternate dispute resolution. When signing the deed of trust, the **trustor neither knew, nor had reason to know that a successor in interest to the beneficiary would subsequently self impose restrictions upon modification of the deed of trust and create liability for itself if it agreed to alternate dispute resolution.**

The master pooling and servicing agreement creates restrictions upon modification of the promissory note by:

(a) Imposing the restrictions on deed of trust modification required to be made to qualify for pass through tax treatment under IRS regulations.

(b) Imposing restrictions upon the number of deed of trusts in the pool which may be modified.

(c) Providing a procedure and fees to be paid for foreclosure but no procedure to modifying the loan as an alternate dispute resolution.

(d) Creating securities with classes of ownership ("tranches") with adverse and opposing financial interests resulting in so called "tranche warfare" so that a modification which favors one tranche may work a detriment upon another.

(e) Restricting the ability to lower interest payments on the note.

(f) Restricting the ability to increase the number of payments to be made.

(g) Restricting the ability to defer payments.

(h) Restricting the ability to extend the term of the deed of trust.

(i) Restricting the ability to impose a temporary moratorium on payments.

(j) Restricting the ability to accept "short sales".

(k) Creating potential liability to a specific class of certificate holders by entering into a modification agreement required for an alternate dispute resolution.

(l) Requiring the servicing agent to purchase any loan which has been modified.

**By separating the incidence of loss from the authority to foreclose, the original note and deed of trust has been altered resulting in a change to the deed of trust without the consent of the trustor.**

Because these restrictions were imposed without the consent of the trustor, the deed of trust is unenforceable.

Further, as noted above securitization in this case has altered the deed of trust and note into unalienable instruments which is not what they were or was understood by the Plaintiff. They were to become altering the nature and negotiability of the deed of trust and note without consent of the trustor and for all these causes the deed of trust is unenforceable for this reason.

## FIFTH  CAUSE OF ACTION
## FRADULENT MISREPRESENTATION AS TO STANDING TO FORECLOSE

**Against Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7**

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-

FIRST AMENDED COMPLAINT

W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7's actions against Plaintiff's  property was a wrongful and illegal act by FRAUDULENT MISREPRESENTATION AS TO STANDING TO FORECLOSE   jeopardizing the title and possession of the Plaintiff  to her property that is the subject of this dispute in that the Defendant  lacked **JURISDICTION AND STANDING TO ENFORCE THE RIGHTS OF CONTRACT in  this case.**

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 is identified in the Notice of Trustee's Sale and other official documents as actual holder of the loan contract at the time  of these notices, and with the power to exercise foreclosure in its name in this contract.

Suit upon a note is a case at law. Foreclosure is an equitable remedy where the court sits in equity. All courts sitting in equity are supposed to do equity between the parties. **Demorizi v. Demorizi, 851 So2d 243 (3rd Fla. App. 2003).** The requirements to sue to collect a debt upon a promissory note are different from the requirements to foreclose a deed of trust securing a debt on a promissory note.

A deed of trust may only be enforced by a person legally entitled to foreclose on the debt or such person's representative such as a nominee or trustee. An assignee of a deed of trust and note assigned as collateral security is the real party in interest, holds legal title to the deed of trust and the note, and is the proper party to file suit to foreclose the deed of trust. Lawyers Title Ins. Co., Inc. v. Novastar Mortg., Inc., 862 So.2d 793 App. (4 Dist. 2003), rehearing denied, review denied 880 So.2d 1212.

By transferring ownership and holding of the deed of trust then selling the promissory note to certificate holders of a publicly traded security, the transfer negated the ability of the trustee or servicing agent to sue as the owner or holder of the promissory note. A deed of trust cannot be foreclosed on behalf of the owner and holder of a note who does not actually own or hold the note.

As publicly traded securities, the price, value and ownership of certificates are continually in flux. As a collectivity, the certificate holders cannot appoint a representative for a continuously changing collection of certificate holders with changing, competing and conflicting interests. The certificate holders cannot appoint a representative to act as an agent for purposes of foreclosure because the principal cannot convey power and authority to an agent which the principal lacks.  If the principal is incapacitated to foreclose, mutatis mutandi, so is the agent.

The point was again made in **Mortgage Electronic Registration Systems, Inc. v. Azize, supra,** where the Court held that the foreclosure action could be brought by MERS as the representative

of the owner of the note. "Here, MERS's counsel explained to the trial judge at the hearing that, in these transactions, the notes are frequently transferred to MERS for the purpose of foreclosure without MERS actually obtaining the beneficial interest in the note. Although the complaint does not allege how or why MERS came to be the owner and holder of the note, the trial court's dismissal was not based on this deficit. Rather, the trial court found that even if MERS was the holder of the note based on a transfer by the lender or a servicing agent, MERS could never be a proper plaintiff because it did not own the beneficial interest in the note. This was an erroneous conclusion." Id.

However, the Court went out of its way to add: "Since the trial court did not base its ruling on this issue [how or why MERS became the holder], we offer no opinion as to whether the complaint fails to properly plead a cause of action without this information being alleged." Id.  The securitization of the note in a pool of other deed of trusts results in the issuance of mortgage backed security certificates which can be traded as securities. Plaintiff's home, encumbered by a deed of trust and note made with the originator named as beneficiary, is the property at issue in this foreclosure action.

Defendant   DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  's trust entity also known as a Special Purpose Vehicle became an alleged successor in interest to the originator and issued securities collateralized by the deed of trust under a master pooling and servicing agreement by which all legal and equitable interest was transferred to the certificate holders. Defendant DEUTSCHE BANK as trustee is not acting in the capacity of the alleged representative for and nominee of the certificate holders for the purposes of foreclosure of the property because the loan is allegedly in default and has not provided any documentation showing their appointment to represent the owners of the note. **Defendant demands strict proof Deutsche Bank has such documentation showing their appointment to represent the owners of the rights to the contract.**

Pursuant to the portions of the  IRS Code herein cited,  To avoid double taxation of the trust and the certificate holders and obtain a single event tax treatment from the Internal Revenue Service, deeds of trust are held in Real Estate Mortgage Investment Conduits ("REMICS"). To qualify for the single taxable event, all interest in the deed of trust must be transferred forward to the certificate holders. The legal basis of REMICs was established by the Tax Reform Act of 1986 (100 Stat. 2085, 26 U.S.C.A. §§ 47, 1042), which eliminated double taxation from these securities. The principal advantage of forming REMICs for the sale of mortgage-backed securities is that REMICs are treated as pass-through vehicles for tax purposes helping avoid double-

FIRST AMENDED COMPLAINT

taxation. For instance, in most mortgage-backed securitizations, the owner of a pool of mortgage loans (the Sponsor or Master Servicer usually) sells and transfers such loans to a special purpose entity, usually a trust, that is designed specifically to qualify as a REMIC, and, simultaneously, the special purpose entity issues securities that are backed by cash flows generated from the transferred assets to investors in order to pay for the loans along with a certain return. If the special purpose entity or the assets transferred qualify as a REMIC, then any income of the REMIC is "passed through" and taxable to the holders of the REMIC Regular Interests and Residual Interests.

Accordingly in this case, neither the trustee nor the servicing agent for the trust has a legal or equitable interest in the securitized loans. Often, the servicing agent for the loan will appear to enforce the loan.   But The servicing agent does not have standing, for only a person who is the holder of the note has standing to enforce the note. See, e.g., In re Hwang, 2008 WL 4899273 at **Bank of New York v. Williams**, 979 So.2d 347 (Fla.App. 1 Dist.,2008). District Court of Appeal of Florida, First District.

The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principal is the holder. *See, e.g., In re Vargas,* 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520. The Defendants  alleges that Defendant Deutsche is the holder of the note for purposes of standing to bring an action of foreclosure. This is a legal impossibility and, accordingly, a false assertion. Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  were instrumental in the issuance and sale of the certificate to certificate holders. **This means the Defendant Deutsche Bank knew that they were not any longer the holder of the rights to the contract.**

Only the certificate holders have standing. Hypothetically, Deutsche Bank may have derivative standing to foreclose as the representative and nominee of the certificate holders. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder. *See, e.g., In re Vargas,* 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520. Deutsche Bank has failed to provide supporting documentation that it has been appointed to act on behalf of the certificate holders and that the certificate holders have conferred the power and authority upon the Plaintiff necessary to bring an action in foreclosure.

Absent this, Defendant's  foreclosure action is fraudulent as a basis for such or of claims in this case and fails to  empower the court with the personal jurisdiction of  a legally  established  true party in interest for the plaintiff to bring the claim in their behalf.

FIRST AMENDED COMPLAINT

As a proximate result of these fraudulent misrepresentations and failures of disclosure and Plaintiff's justifiable reliance upon the same, the Plaintiff has been damaged by denying her the right to full disclosure of these fraudulent misrepresentations by which she would have had the cause, incentive and opportunity to **make defenses against enforcement of the contract.**

Plaintiff did not discover either the nature or the extent of this FRAUD AND DECEIT, and MISREPRESENTATION perpetrated upon her by the Defendants until a date on or about December, 2009.

Defendants' actions in foreclosure in the name of ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  was fraudulent, misleading, and with callous disregard for the rights of said Plaintifft, with the intention that the Plaintiff would be deceived and placed at  unconscionable disadvantage and abuse at the hands of the Defendants.

Defendant **should be ordered to make full reconveyance of said property to Plaintiff or the Court should restore and quiet title to the security and benefit of the Plaintiff if it has been sold to a third party by the time these issues are adjudicated by the Court.**

**Plaintiff prays the Court for this relief and that it is so ordered.**

41.Further, Defendants DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT  SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 , are not the holder in due course **because they are not the drawer, maker, issuer, originator and do not have attachment, enforceability, secured interest, or priority.**  As these terms are defined in UCC 9-203 (a)(b) and priority in Sections UCC 9-301 and UCC 9-317.

42.    According to section UCC 3-302 (c) "a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution."

43.    In UCC 3-106(d) "If a promise or order at the time it is issued or first comes into the possession of a holder contains a statement, required by applicable statutory or administrative law, to the effect that the rights of a holder or transferee are subject to claims or defenses that the issuer [you] could assert against the original payee [bank], the promise, or order is not thereby made conditional for the purposes of Section UCC 3-104(a); but if the

promise or order is an instrument, there cannot be a holder in due course of the instrument." Plaintiff is the true holder in due course and the only person who can assert a claim or defense under UCC 3-305, 3-306 & 3-307 (California Commercial Code 3305, 3306, 3307 respectively).

44.   The note signed by Plaintiff as the drawer/maker became a financial asset under UCC 8-102(9) and a security under UCC 8-102 (9)(i), (15), which makes Plaintiff the Appropriate person under section UCC 8-107 and gives Plaintiff control under UCC section 8-106, which in turn gives Plaintiff "Security entitlement" under UCC 8-102 (17), which makes Plaintiff the "Entitlement holder" under UCC 8-102(7), which generates an "Entitlement order" under UCC 8-102(8).

**45.**   WHEREFORE, the Plaintiff moves this court to void the contract and restore title to Plaintiff by reconveying the deed of trust   October 8, 2003.

## Conclusion

**The  deed of trust is unenforceable  and  the Defendants lack standing.**

**A.  The deed of trust is unenforceable because:**

*1.   The trustor never consented to the securitization of the deed of trust*

*2.   Defendant modified the deed of trust in securitization by imposing restrictions upon the holder's ability to modify the deed of trust without the consent of the trustor.*

*3.   Defendant altered the deed of trust by restricting its transferability and dividing incidence of loss from authority to foreclose without the consent of the trustor.*

*4.   Defendant modified the deed of trust without consideration.*

**B.  Defendant  DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7  lacked standing to foreclose because:**

**(1)** *Defendant* DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 *does not own or hold the rights to enforce the contract;*

**(2)** *Defendant* DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATE HOLDERS FOR ARGENT SECURITIES TRUST 2003-W7 ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7 *does not and cannot act as the agent for the certificate holders for purposes of foreclosure;*

**WHEREFORE,** Plaintiff having set forth the claims for relief against Defendants respectfully prays that this Court grant the following relief against the Defendants:

1.      Actual Economic and Non-Economic Damages;

2.      for a declaration of the rights and duties of the parties relative to Plaintiff's Home to determine the actual status and validity of the loan, Deed of Trust, and Notice of Default.

3.      For a temporary restraining order, a preliminary injunction and permanent injunction enjoining all Defendants, their agents, assigns, and all person acting under, for, or in concert with them, from taking possession of or selling, offering, or advertising this property for sale, or transferring or conveying the property located at  20219 Black Canyon Drive, Katy, Texas while a question of title still exists in Federal Court.

4.      Restoration of title to Plaintiff;

5.      For damages as provided by statute;

6.      For an Order enjoining Defendants from continuing to violate the statutes alleged herein;

7.      For punitive damages;

8.      For consequential and incidental damages of $1,000,000.00;

9.      For such other and further relief as the court may deem just and proper.

Dated:  _11-17-10_____

_Walter Schieroni   Stella S._

Walter Schieroni and Stella Schieroni

DTRUST **2003176032**

17 PGS

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

**FILED BY**
**FIDELITY NATIONAL TITLE**

828762

Prepared By:Argent Mortgage Company, LLC
Kenneth Campbell
2550 Golf Road, East Tower
Floor #10
Rolling Meadows, IL 60008

————————————————[Space Above This Line For Recording Data]————————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated October 8, 2003
together with all Riders to this document.
**(B) "Borrower"** is STELLA SCHIERONI and WALTER SCHIERONI

Borrower is the grantor under this Security Instrument.
**(C) "Lender"** is Argent Mortgage Company, LLC

Lender is a Corporation
organized and existing under the laws of Delaware

0053490470-9706

**TEXAS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    **Form 3044  1/01**

VMP -6(TX) (0005)

Page 1 of 16                    Initials: SS WS

VMP MORTGAGE FORMS - (800)521-7291

10/08/2003 3:22:55 PM

Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is Argent Mortgage Company, LLC
. Trustee's address is

One City Boulevard West, Suite 1700  Orange, CA 92868

**(E) "Note"** means the promissory note signed by Borrower and dated October 8, 2003
The Note states that Borrower owes Lender one hundred ninety-one thousand and 00/100
Dollars
(U.S. $191,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than November 1, 2033
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                     ☐ Biweekly Payment Rider        ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

0053490170  9706
Initials:

-6(TX) (0005)          Page 2 of 16    10/08/2003 3:22:55    Form 3044   1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of HARRIS :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 2251-01-003-0040-914                        which currently has the address of

20219 BLACK CANYON DRIVE                                              [Street]

KATY                              [City], Texas  77450          [Zip Code]

("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0053490470 - 9706

Initials:

-6(TX) (0005)                  Page 3 of 16  10/08/2003 3:22:55 PM Form 3044   1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



0053490470  9706
Initials: _____

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with



the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

0053498470  8706
Initials: 

-6(TX) (0005)    Page 9 of 18    10/08/2003 3:22:55    Form 3044   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



0053490470  9706
Initials: SF  W.S

-6(TX) (0005)    Page 12 of 16    10/08/2003  3:22:55    Form 3044   1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

0053490470   9706
Initials:

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☐ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☒ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

0053490470 - 9705
Initials: _____

-6(TX) (0005)            Page 14 of 16    10/08/2003 3:22:55    Form 3044   1/01

AS PER ORIGINAL

# Exhibit 'A'

Lot 4, in Block 3, of CANYON GATE, CINCO RANCH, SECTION ONE, a subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded under Slide No(s) 1629/A and 1629/B of the Plat Records of Fort Bend County, Texas.

1

THIS DOCUMENT WAS
FILED BY AND
RETURNED TO:

FIDELITY NATIONAL TITLE

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

*Dr. Dianne Wilson*

2003 Dec 22 01:42 PM

EG $39.00                    2003176032

Dianne Wilson, Ph.D. COUNTY CLERK
FT BEND COUNTY TEXAS

STATE OF TEXAS
COUNTY OF FORT BEND
I, Dianne Wilson, County Clerk of Fort Bend County, Texas,
do hereby certify that the foregoing is a true and correct copy
as the same appears on file and recorded in the appropriate records.
Note: A portion of a personal identifying number may have been
redacted as allowed by law.   APR 9 2010   Date

*Dianne Wilson*
Dianne Wilson, County Clerk
Fort Bend County, Texas

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                     _____ (Seal)
                                                     STELLA SCHIERONI                  -Borrower

_____                     _____ (Seal)
                                                     WALTER SCHIERONI                  -Borrower

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

_____ (Seal)              _____ (Seal)
                        -Borrower                                             -Borrower

0053490470 - 9706

-6(TX) (0005)          Page 15 of 16  10/08/2003 3:22:55 PM  Form 3044  1/01

**STATE OF TEXAS,** County ss: _Harris_

Before me _Michelle N. Hulse_ on this day personally appeared

_STELLA SCHIERONI AND WALTER SCHIERONI_

known to me (or proved to me on the oath of _____

or through _____TDL_____ to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and considerations therein expressed.

Given under my hand and official seal of office this _8_ day of _October 2003_
Day                Month/Year

MICHELLE N. HULSE
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
03-06-2007

Notary Public

My Commission Expires: _03-06-2007_

400-16TX (4/02)          Page 16 of 16          0053490470 - 9706

10/08/2003 12:12:05 PM

HUGHES, WATTERS & ASKANASE, L.L.P.
ATTORNEYS AT LAW
333 CLAY, SUITE 2900
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF ACCELERATION AND ENCLOSING
## NOTICE OF SUBSTITUTE TRUSTEE'S SALE

## STATE LAW REQUIRES THIS NOTICE.  IT DOES NOT CHANGE OR
## SHORTEN THE TIME PERIOD FOR YOU TO EXERCISE
## YOUR RIGHTS AS DESCRIBED BELOW

June 05, 2009

Stella Schieroni
20219 Black Canyon Drive
Katy, Texas 77450

Re:     Loan No: 4000339046

Property Address: 20219 Black Canyon Drive, Katy, Texas 77450

**This is an attempt by a debt collector to collect a consumer debt and any information obtained will be used for that purpose.**

**Unless within thirty (30) days after you receive this notice you dispute the validity of this debt, or any portion of the debt, the debt will be presumed to be valid.**

**If within this thirty days:     (i) You notify me in writing that you dispute this debt, or any portion of it, then I will obtain and mail to you verification of this debt or a copy of any judgment against you; (ii) You request in writing that I obtain the name and address of the original creditor, if different from the current creditor, then I will obtain and mail it to you; (iii) you notify me in writing that you dispute this debt, or any portion of the debt, then I will cease collection of the debt, until I obtain verification of the debt, or a copy of any judgment, and mail it to you; (iv) you request in writing the name and address of the original creditor, if different from the current creditor, then I will cease collection of the debt, until I obtain the name and address of the original creditor and mail it to you.**

*(See the name of the creditor and the amount of the debt on the next page)*

HUGHES, WATTERS & ASKANASE, L.L.P.
ATTORNEYS AT LAW

Walter Schieroni
June 05, 2009
Notice of Acceleration
Page 2

1.      The undersigned represents DEUTSCHE BANK NATIONAL TRUST COMPANY , AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATEHOLDERS FOR ARGENT SECURITIES TRUST 2003-W7, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7, BY ITS SERVICER-IN-FACT, AMERICAN HOME MORTGAGE SERVICING, INC. ('Lender'), and is authorized to deliver this letter on its behalf.  Despite notice of default and notice of intent to accelerate sent to you, you have failed to cure the default on the above referenced loan. Because of your failure to pay the delinquent amount due on the above referenced loan, DEUTSCHE BANK NATIONAL TRUST COMPANY , AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATEHOLDERS FOR ARGENT SECURITIES TRUST 2003-W7, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7, BY ITS SERVICER-IN-FACT, AMERICAN HOME MORTGAGE SERVICING, INC., hereby accelerates the maturity of your loan, and declares the entire balance of the loan due and payable without further demand, and will proceed to foreclose and sell the Property under the terms of the Deed of Trust.

2.      In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale relative to the Property. The Notice of Substitute Trustee's Sale advises you that the foreclosure sale of the Property authorized by the Deed of Trust will take place on July 07, 2009, between the hours of 10:00 a.m. and 4:00 p.m. at the North area of the County Courthouse of Richmond, Fort Bend County, Texas, and the Property will be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 1:00 p.m. and 4:00 p.m. **The earliest time the foreclosure sale will begin will be 1:00 p.m.** Provided:  If you notify me in writing that you dispute this debt or any portion of it within thirty (30) days after receipt of this letter, then I will obtain verification of the debt and mail it to you.  The foreclosure sale will not proceed until I obtain verification of the debt as required and mail it to you.

3.      **The name of the creditor to whom this debt is owed is: DEUTSCHE BANK NATIONAL TRUST COMPANY , AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATEHOLDERS FOR ARGENT SECURITIES TRUST 2003-W7, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7.**

4.      **The payoff due as of June 02, 2009 is $190,001.29.**

5.      The amount necessary for you to pay in order to cure the existing defaults and prevent this foreclosure sale may be determined by contacting:

AMERICAN HOME MORTGAGE SERVICING, INC.
c/o Carolyn A. Taylor
Hughes, Watters & Askanase, L.L.P.
333 Clay, Suite 2900
Houston, Texas  77002
(713) 759-0818

6.      If you are presently on active duty in the Armed Services of the United States or have been discharged within three (3) months prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemember's Civil Relief Act.

# HUGHES, WATTERS & ASKANASE, L.L.P.
## ATTORNEYS AT LAW

Walter Schieroni
June 05, 2009
Notice of Acceleration
Page 3

7.     Under Texas law and the terms of the applicable loan documents, you may be liable for any deficiency owing on the Note and under the Deed of Trust after the foreclosure sale, including but not limited to, accrued but unpaid interest, escrow charges, late fees, default interest, trustee's fees, attorney fees and expenses incurred in connection with the foreclosure, as applicable.

8.     This letter constitutes notice required by law and the terms of the applicable loan documents.  To the extent that you have received a discharge in bankruptcy, this notice does not constitute an attempt to collect a debt from you personally in violation of the discharge injunction of 11 U.S.C. § 523.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P.

By: *Carolyn A. Taylor, Substitute Trustee*
CAROLYN A. TAYLOR, Substitute Trustee

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED
No. 7008 1140 0000 4516 2386

<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**Fort Bend County Deed of Trust:**

    **Date:** October 8, 2003

    **Amount:** $191,000.00

    **Grantor(s):** STELLA SCHIERONI and WALTER SCHIERONI

    **Original Mortgagee:** ARGENT MORTGAGE COMPANY, L.L.C.

    **Current Mortgagee:** DEUTSCHE BANK NATIONAL TRUST COMPANY , AS TRUSTEE IN TRUST FOR THE BENEFIT OF THE CERTIFICATEHOLDERS FOR ARGENT SECURITIES TRUST 2003-W7, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2003-W7

    **Mortgagee Servicer/Address:** (representing Mortgagee under a written servicing agreement) AMERICAN HOME MORTGAGE SERVICING, INC., 3 Ada, Irvine, California 92618

    **Recording Information:** under File No. 2003176032, Fort Bend County, Texas

    **Legal Description:** LOT 4, IN BLOCK 3, OF CANYON GATE, CINCO RANCH, SECTION ONE, A SUBDIVISION IN FORT BEND OCUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER SLIDE NO(S). 1629/A AND 1629/B, OF THE PLAT RECORDS OF FORT BEND COUNTY, TEXAS (Property)

**Date of Sale**: July 7, 2009 between the hours of 1:00 p.m. and 4:00 p.m.

**Earliest Time Sale Will Begin:** 1:00 p.m.

**Place of Sale:**    The foreclosure sale will be conducted in the area designated by the Fort Bend County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

The undersigned has been appointed as Substitute Trustee(s), each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified.  The sale will begin at the earliest time stated above or within three (3) hours after that time.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

    EXECUTED in multiple originals on June 15, 2009.


TRUSTEE ADDRESS:               *Carolyn A. Taylor, Substitute Trustee*
c/o HUGHES, WATTERS & ASKANASE, L.L.P.    _____
333 Clay, Suite 2900
Houston, Texas  77002               RACHELLE BABCOCK or SANDY DASIGENIS or JEFF
(713) 759-0818                      LEVA or PATTIE SULLIVAN or CAROLYN A. TAYLOR,
Reference:  4000339046            Substitute Trustee